No. 23-2071
# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

MICHAEL WOOD,

Plaintiff-Appellant

v.

SECURITY CREDIT SERVICES, LLC, d/b/a
EQUIPRO INVESTMENTS

Defendant-Appellee

---

Appeal from the United States District Court
For the Northern District of Illinois,
Eastern Division
Case No. 20-CV-02369
The Honorable Sara L. Ellis, Presiding

---

## SUPPLEMENTAL BRIEF OF PLAINTIFF-APPELLANT
## MICHAEL WOOD

---

The Law Office of M. Kris Kasalo, Ltd.
Mario Kris Kasalo
4950 Madison St.
PO Box 1425
Skokie, IL 60077
P: (312) 726-6160
F: (312) 698-5054
E: mario.kasalo@kasalolaw.com


*Counsel for Plaintiff-Appellant*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2071

Short Caption: Michael Wood vs. Security Credit Services, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Michael Wood

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    The Law Office of M. Kris Kasalo, Ltd.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Mario Kris Kasalo        Date: 4/26/2024

Attorney's Printed Name: Mario Kris Kasalo

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑  No ☐

Address: 4950 Madison St. P.O. Box 1425, Skokie, IL 60077

Phone Number: 312-758-6041        Fax Number: 312--698-5054

E-Mail Address: mario.kasalo@kasalolaw.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... ii

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION.............………………………………………………………1

ARGUMENT ......................................................................................................1

I.      THE BONA FIDE ERROR DEFENSE DOES NOT APPLY TO
        MISTAKES OF LAW ……..………………………………………………..1

II.     ASSUMING ARGUENDO THAT SCS' FAILURE TO COMMUNICATE
        THAT WOOD'S DEBT WAS DISPUTED WAS A MISTAKE, IT WAS
        A LEGAL MISTAKE, NOT A FACTUAL ONE…………………………..3

III.    THIS COURT CANNOT AFFIRM BASED
        ON THE BONA FIDE ERROR DEFENSE....……………………………11

IV.     SCS DOES NOT ALLEGE TO HAVE MADE A CLERICAL OR
        FACTUAL ERROR.………………………………………………………..14

CONCLUSION ...................................................................................................18

CERTIFICATE OF COMPLIANCE........................................................................20

CERTIFICATE OF SERVICE ...............................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Evans v. Portfolio Recovery Assocs., LLC*,
889 F.3d 337 (7th Cir. 2018)……………………………………1-8, 10, 12, 15

*Ewing v. MED-1 Sols., LLC*,
24 F.4th 1146 (7th Cir. 2022)...…………………………………………17

*Jerman v. Carlisle, McNellie, Kramer & Ulrich LPA*,
130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010).…………………………………2,9

*Kort v. Diversified Collection Servs.*,
394 F.3d 530 (7th Cir. 2005)…………………………………………..2

*Leeb v. Nationwide Credit Corp.*,
806 F.3d 895 (7th Cir. 2015)...…………………………………………17

*Ross v. Fin. Asset Mgmt. Sys., Inc.*,
74 F.4th 429 (7th Cir. 2023)……………………………………………17

*Thomas v. LVNV Funding, LLC*,
642 F. Supp. 3d 728 (N.D. Ill. 2022)……………………………………...18

*Tolliver v. Nat'l Credit Systems, Inc.*,
2021 U.S. Dist. LEXIS 180784, (W.D. Wis. Sept. 22, 2021)……………………17

**Rules, Statutes, and Other Authorities**

15 U.S.C. § 1692e(8)……………………………………………passim

15 U.S.C. § 1692k(c)...……………………………………………1,2, 9

**INTRODUCTION**

The panel has determined that this case will be decided on the briefs, without oral argument, but requires supplemental briefing. According to the panel, "The record suggests SCS believes Wood's account was not disputed because the dispute was "resolved" by PenFed as being invalid. Doc. 113-2 Ex. C at 36:1–12, 55:23–56:8, 83:10–84:6. This may indicate a mistake of law." *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 347 (7th Cir. 2018) ("Section 1692e(8) does not require an individual's dispute be valid or even reasonable.")." The panel thus asserts that "It is not clear if any mistake of law led to Wood's claims. The parties are directed to address the nexus between any mistake of law and Wood's claims." This reply brief will address this nexus.

## I.   THE BONA FIDE ERROR DEFENSE DOES NOT APPLY TO MISTAKES OF LAW

Under the FDCPA, "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. 15 U.S.C.§ 1692k(c). In order to claim this defense, the burden is on the defendant to show (1) "that the presumed FDCPA violation was not intentional"; (2) "that the presumed FDCPA violation resulted from a bona fide error"; and (3)

"that it maintained procedures reasonably adapted to avoid any such error." *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 349-50 (7th Cir. 2018), citing *Kort v. Diversified Collection Servs., Inc*., 394 F.3d 530, 537 (7th Cir. 2005).

Importantly, a defendant can invoke the bona fide error defense only if it claims it made an error of fact, not an error of law. *Evans,* 889 F.3d at 349, citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604-05, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010). Thus, "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Id*.

Section 1692k(c) was the subject of the Supreme Court's opinion in *Jerman*. There, a debt collector informed a debtor that she could only dispute her debt if she did so in writing. *Jerman*, 559 U.S. at 578-79. The district court held that that was a misstatement of law, in violation of the FDCPA—a holding that the Supreme Court assumed was correct. The debt collector argued that § 1692k(c) precluded liability because the violation was unintentional and was the result of its honest belief, informed by thorough legal research, that the FDCPA required disputes to be in writing. *Id*. at 579. The Supreme Court rejected the argument, holding that FDCPA violations excusable under § 1692k(c) must result from "clerical or factual mistakes," not mistakes of law. *Id*. at 587, 604-05. The Court drew support for its conclusion from the statutory requirement that a debt collector maintain

"procedures reasonably adapted to avoid" errors. The Court wrote that "procedures" are "processes that have mechanical or other such regular orderly steps" designed to "avoid errors like clerical or factual mistakes," and that legal analysis did not lend itself to such mechanical procedures. *Id*. at 587 (internal quotation marks omitted). Finally, the Court noted that although the debt collector did not intend to violate the FDCPA, its violation resulted from intentional conduct, and liability was not limited to willful violations. *Id*. at 581, 584. Applying this standard, if SCS is found to have committed a mistake, the mistake was a legal one, as explained below.

## II.     ASSUMING ARGUENDO THAT SCS' FAILURE TO COMMUNICATE THAT WOOD'S DEBT WAS DISPUTED WAS A MISTAKE, IT WAS A LEGAL MISTAKE, NOT A FACTUAL ONE

The panel notes that "The record suggests SCS believes Wood's account was not disputed because the dispute was "resolved" by PenFed as being invalid. Doc. 113-2 Ex. C at 36:1–12, 55:23–56:8, 83:10–84:6. This may indicate a mistake of law." *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 347 (7th Cir. 2018) ("Section 1692e(8) does not require an individual's dispute be valid or even reasonable.").

As an initial matter, Wood's position is that SCS has not shown that it did not intend to violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692e(8). Indeed, it has knowingly adopted and relied on PenFed's faulty policies and

procedures with which it was wholly familiar, that ensure that any debt disputed by a consumer will not be considered disputed if PenFed determines that the dispute is without merit, and a consumer does not respond to a communication by PenFed informing him of its determination. [Dkt. #113-2, p. 60, l. 1-13 (PAGE ID# 1670); Dkt. # 113-7, ¶¶ 18, 20, 23, 50 ; Dkt. # 113-2, Dkt. #113-2, p. 35, l. 11 to p. 36, l. 12 (PAGE ID #: 1645-1646)]. Notably, PenFed and SCS' processing and later credit reporting of Wood's account went exactly as SCS expected and intended it to when Wood's dispute was deemed without merit, and thus thereafter disregarded. The procedures adopted by SCS thus ensured that the FDCPA would be violated on every debt sold to SCS that was disputed by a consumer and then found to be without merit by PenFed.

Assuming *arguendo* that SCS made a mistake in not communicating Wood's dispute to the credit reporting agencies, any mistake would be one of law. *Evans* is instructive on why SCS' refusal or failure to communicate that the alleged debt is disputed resulted from a legal mistake, and not a factual one. In that case, a lawyer for the consumer sent a letter stating in part that the consumer was "unable to pay" and "the amount reported is not accurate." *Evans*, 889 F. 3d at 342. This Court specifically found that the letter clearly communicated that the debt was disputed and that Evans, a plaintiff similar to Plaintiff in this case, had standing to sue because the letter had the potential to lower her credit score. This Court also held

that the bona fide error defense was only available for "clerical" type errors of fact and not for errors of law. *Id*. at 349-50. It concluded that the error in *Evans* was an error of law and thus the defendant was not eligible for the defense. *Id*. at 350.

Specifically, in *Evans*, debt collector PRA maintained the Letters did not introduce a dispute because "there was nothing 'false, deceptive or misleading' about what PRA did." It claimed that "[t]he record shows that these plaintiffs owed the debts and the amounts stated were accurate." *Id*. at 346. This Court found that that argument fails because "our task is to interpret the words of Congress, not add to them." *Id*. citing *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). This Court noted that "Section 1692e(8) does not require an individual's dispute be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the debt." *Id*. at 347, citing *DeKoven v. Plaza Assocs*., 599 F.3d 578, 582 (7th Cir. 2010) ("[A] consumer can dispute a debt for 'no reason at all ....'").

This Court noted that PRA incorrectly believed the statement "the amount reported is not accurate" did not constitute a "dispute" under § 1692e(8). In other words, according to the Court, it "incorrect[ly] interpret[ed] ... the requirements of the FDCPA]." *Evans*, 889 F. 3d at 350. In finding that the bona fide error defense did not apply, this Court held:

> <u>This is a mistake of law</u>. By contrast, a mistake of fact would have occurred if, for example, PRA lost the Letters before opening them or did not actually read the language disputing the debt. But PRA concedes that it received and

read the Letters, including the relevant phrase. Therefore, the district courts were correct that the bona fide error defense is not available.
*Id*. (emphasis added).

Similar to *Evans*, SCS in this case believed, albeit incorrectly, that the debt was not disputed because PenFed made a determination that it wasn't a valid dispute, sent a letter to Wood informing him as much, and Wood failed to respond to the letter. But this was a mistake of law as Wood *had* disputed the Debt, and SCS should have inquired of PenFed whether he disputed the Debt instead of relying on PenFed's flawed process (of which it was at all times aware) of selling SCS disputed debts that were identified as being undisputed. According to SCS' policies and procedures, Wood's Debt was not considered a disputed account and is still not considered a disputed account, by SCS to date. Indeed, SCS testified as much, as follows:

> Q.· ·Okay.· According to SCS's policy, had SCS known of the facts relating to Mr. Wood's debt, would it have reported the debt as disputed or not once it began reporting the debt after it bought the same?...
> A.· ·If it was a resolved dispute or complaint, Security Credit Services would acknowledge that as -- or they would -- it's a resolved matter. We would have provided our normal business practices, which is reporting the account to the credit bureau.
> Q.· ·Not as disputed, though, correct? ·
> A.· ·It's not a disputed account.
> Q.· ·Okay.
> A.· ·So why would we report it as a dispute? That actually would be inaccurate information.
>
> [Dkt, # 113-7, ¶ 46; Dkt. # 113-2, Deposition of SCS' Corporate Representative, p. 35, l. 11 to p. 36, l. 12].

The foregoing thus evidences SCS' false belief that the account was not disputed, and thus that it did not have to communicate that it was disputed when it communicated other credit information regarding the account to the credit reporting agencies. Why did SCS believe that the account was not disputed? Because, according to SCS 1) PenFed sent a letter to Wood that found that the dispute was without merit and thus resolved, 2) Wood didn't respond to said letter, and 3) based on both PenFed's and SCS' understanding, because Wood didn't respond to PenFed's letter, this communicated that he agrees with the finding that the dispute was without merit, and the dispute thus ceased to exist. [Dkt, # 113-7, ¶ 46; Dkt. # 113-2, Deposition of SCS' Corporate Representative, p. 60, l. 1-16; PAGE ID #: 1670, stating "Q. So in Mike Wood's situation where he disputed the debt to his attorney, PenFed found the dispute to be without merit and thus resolved, is that your understanding of a dispute that's resolved to Mike Wood's satisfaction? A. Mr. Wood never responded. Q. So because he didn't respond, according to the policies and your understanding of how PenFed works, because he didn't respond, that's a communication that he agrees with the result; is that what you're saying? A. Yes."].

Unfortunately for SCS, most of the issues it raised and specifically relating to the alleged affirmative defense have been definitively decided in favor of the consumer in the case of *Evans*. As *Evans* states, "Section 1692e(8) does not require

an individual's dispute be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the debt. See *DeKoven v. Plaza Assocs*., 599 F.3d 578, 582 (7th Cir. 2010) ("[A] consumer can dispute a debt for 'no reason at all ....")." *Evans*, 889 F.3d at 346-47. By allowing PenFed to determine whether a disputed debt is "valid", and thereafter purchasing said debt and credit reporting it as not being under dispute as a result of this determination, SCS has committed a mistake of law; if a dispute can be made as to a debt for any reason—valid or not—then an entity such as SCS cannot be allowed to abrogate the dispute by having the entity from which it purchases said debt unilaterally determine that the debt was no longer under dispute, without any further communication from a consumer that would allow it to reasonably conclude as such. Nor does section 1692e(8) require a consumer to respond to a letter denying the validity of a previously-made dispute in order to maintain a disputed debt status. To believe otherwise is a mistake of law.

Put another way, SCS incorrectly interpreted the requirements of the FDCPA in relying on PenFed's determination that the Debt was no longer disputed because Wood didn't respond to a letter sent by PenFed finding the dispute to be "invalid". If, according to mandatory precedent in this Circuit, a consumer doesn't have to communicate a reason for disputing a debt and if a dispute does not have to be valid to trigger a debt collector's duty to report a debt as being disputed, then *ipso*

*facto* neither a debt collector (nor an entity from which it purchases debts) can be allowed to make its own determination of validity as to any given dispute, and thereafter refuse to communicate that a disputed debt is disputed as a result of this determination.

This means that, after PenFed received the letter indicating a dispute, SCS had to report such a dispute after it purchased the Debt even if it disagreed or the record does not support the existence of a dispute. *Francisco v. Midland Funding, LLC*, 2019 U.S. Dist. LEXIS 20601, 2019 WL 498936, at *5 (N.D. Ill. Feb. 8, 2019) (finding § 1692e(8) violation even though defendant argued that plaintiff "never substantiated a genuine reason why she did not owe the debt"); *Centeno v. LVNV Funding, LLC*, 2019 U.S. Dist. LEXIS 84271, *7-*10 (N.D. Ill. May 20, 2019) (same). It is thus a mistake of law to believe that either a creditor or debt collector's opinion on the validity of a dispute can torpedo the rights afforded under section 1682e(8).

Further, SCS' understanding that Wood was required to respond to PenFed's letter (denying that his previous dispute was valid) if he wished to maintain the disputed status of his debt also constitutes a misconstruction of section 1692e(8)'s requirements. The Supreme Court's holding in *Jerman v. Carlisle* was that "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA

resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Id*. at 604-05.

That is what we have here: SCS' incorrect interpretation of section 1692e(8)'s provisions as requiring multiple communications from a consumer, each of which confirm that a debt is still disputed. But section 1692e(8) does not impose such a requirement for Wood to have to respond to PenFed's letter as argued by SCS—a single dispute, or the knowledge thereof, is enough to trigger its protections. Wood did enough when he sent a letter to PenFed disputing the Debt— he was not required to do more to maintain his dispute status. Indeed, the "knows or should know" standard of § 1692e(8) "requires <u>no notification</u> by the consumer ... and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how that knowledge is acquired." *Evans*, 889 F.3d at 347, citing *Brady v. Credit Recovery Co., Inc*., 160 F.3d 64, 67 (1st Cir. 1998). Thus, it makes no difference that Wood did not respond to PenFed's letter finding the delinquency "valid", as he was not required to do so by law in order to maintain his dispute. Wood clearly disputed the Debt, as acknowledged by SCS' own Chief Compliance Officer Brett Soldevila, and Wood at no time communicated otherwise to PenFed or SCS. [Dkt. #113-7, ¶ 19]. [1] SCS' failure to apprise itself of

---

[1] Though SCS' Chief Compliance Officer acknowledged Wood's dispute in an email he sent to PenFed seeking indemnification after the FDCPA action was filed, SCS' corporate representative later testified that the Debt was not even subject to a dispute, evidencing that the alleged

information as to whether the debts it was credit reporting were previously disputed before credit reporting the same, and its unreasonable reliance on *PenFed's* determination as to whether a previous dispute was valid, is a mistake of law as every dispute is "valid" under section 1692e(8), and thus must be reported.

## III. THIS COURT CANNOT AFFIRM BASED ON THE *BONA FIDE ERROR* DEFENSE

SCS cannot satisfy the first element by asserting the violation was unintentional when, at all times relevant hereto, it maintains that the Debt was properly purchased as an eligible account, which means (to SCS) that it could properly be reported without also communicating that it was subject to a dispute. [Dkt. # 113-7, ¶¶ 21, 39, 47]. Indeed, as a matter of policy and mutual understanding, when SCS purchases debts from PenFed, any disputes previously made by accountholders to PenFed that were "resolved" by PenFed would also be considered by SCS to be "resolved", and thus included in the debt pool purchased by SCS as debts not subject to dispute. [Dkt. # 113-7, ¶ 22]. Moreover, as to the specific Debt, SCS expressly posits that Wood's account Debt "was not a dispute" since it was resolved by PenFed as being invalid.  [Dkt. # 113-7, ¶ 46]. The violation at issue was thus not made as a result of mistake, but rather as a result of

---

"mistake" is contrived, and that SCS' policies and procedures do not consistently define what a "dispute" is, and thus said policies cannot be said to prevent a failure by SCS to communicate that a disputed debt is disputed. [See Dkt. #113-7, ¶ 46; Dkt. # 113-2, Deposition of SCS' Corporate Representative, p. 60,  l. 1-16; PAGE ID #: 1670].

SCS' faulty policy of disregarding disputes that PenFed—with the approval and understanding of SCS—deemed to be without merit, which was a mistake of law. Simply put, as the *Evans* court stated, "Section 1692e(8) does not require an individual's dispute be valid or even reasonable," with the reporting obligation triggered by a plaintiff "simply mak[ing] clear that he or she disputes the debt." *Evans*, 889 F.3d at 347. Wood made this clear when he sent PenFed a letter, while PenFed made it clear, with SCS' knowledge and ratification, that said dispute would be disregarded.

SCS thus fails to establish the first element of the defense: that its failure to communicate to Equifax and other credit reporting agencies that the Debt was disputed was a *bona fide* error. Rather, SCS' policies and procedures as designed are calculated to result in SCS purchasing accounts as being eligible and thus not subject to a dispute, because they were "resolved" by PenFed as being invalidly disputed, when in fact the accounts were previously disputed and properly were subject to a dispute. Applying the above, SCS' policy of considering disputes that were made but found to be invalid—"resolved disputes"—to be disputes which did not have to be reported as such is a mistake of law, as the FDCPA does not allow a furnisher to determine which disputes are valid, and which not.

SCS concedes that it clearly understood PenFed's procedures for processing disputed debts, but argues that "…a general understanding [by SCS] of how

PenFed, as an original creditor, treated its own dispute obligations, in no way establishes that SCS had reason to know that Wood specifically had previously disputed his debt and that Wood's dispute was in fact ongoing." [SCS' Supplemental Brief, p. 6]. But this argument is a spurious one as SCS knew that disputed accounts would be included in the purchase pool, since it knew that disputed accounts that PenFed found to have invalid disputes would be included as being eligible to be sold and thus later credit-reported without a dispute marker. SCS thus knew that spuriously "resolved disputes", like that of Wood, would be included in the pool of purchased debts, which it would consider to be undisputed accounts and thereafter wrongly report them as undisputed. [Dkt. # 113-7, ¶¶ 20-22, 24-25, 26, 35, 38, 39, 46]. Had SCS not knowingly adopted PenFed's flawed procedures that transmutated ineligible, disputed accounts into eligible undisputed ones, it would have known that Wood's debt, specifically, was disputed. SCS thus should have known that the Debt was disputed, but did not know solely due to the policies it has intentionally adopted as they pertain to buying defaulted debts from PenFed.

Also, SCS did not even consider the fact that a consumer made a dispute as being material information, according to its processes, and effectively required a dispute to be made twice (or more) in order for it to even be considered as a dispute. [Dkt. # 113-7, ¶¶ 56, 57]. This also evidences a mistake of law, as section

1692e(8) does not require a consumer to continue to respond to an endless volley of letters from a creditor or debt collector attacking a previously-made dispute, after he has already communicated that a debt is disputed. Ultimately, SCS knew PenFed's process for determining which accounts were subject to dispute did not track what the FDCPA requires, which was to consider ALL disputes as triggering the requirements of section 1692e(8)—irrespective of whether a previous creditor found it to be without merit, and irrespective of whether a consumer refused to previously respond to a letter from said creditor disagreeing with the consumer's position. If SCS did not know of the dispute, it still *should have* known of it. Its failure constitutes a mistake of law, and its policies and procedures that are based upon a faulty understanding of what the law requires cannot in any event be said to be reasonably adapted to prevent violation of section 1692e(8) of the FDCPA.

## IV. SCS DOES NOT ALLEGE TO HAVE MADE A CLERICAL OR FACTUAL ERROR

SCS addresses Wood's argument that its mistake was a mistake of law and therefore it did not qualify for the defense by stating that "clearly, the mistake at issue is that SCS purchased and credit reported what it believed to be an account without any ongoing dispute when in fact Wood continued to dispute the debt (or so he claims)." [SCS' Response Brief, Document 26, p. 30]. SCS argues that "Wood ignored that it is not simply a finding by PenFed that a dispute is without merit that makes it eligible for sale as a resolved dispute but rather it is the

accountholder's agreement or disagreement with that finding". [SCS' Response Brief, Document 26, p. 30].

The problem with SCS' argument is that the processes it used for its determination of whether there *was* an ongoing dispute evidences a mistake of law, since SCS considers Wood's refusal to respond to PenFed's letter to evidence Wood's "agreement" that he no longer disputes the Debt, and thus the dispute was "resolved". But PenFed's determination that Wood's dispute was resolved is not based in reality, as Wood at no time communicated agreement with PenFed's determination. Nor was it reasonable for SCS and PenFed to expect him to respond to the letter which only invites a response if he wanted to pay the Debt. Further, Wood was not required to respond to PenFed's letter under section 1692e(8) in order to maintain his dispute. A mistake of fact would be if, for example, SCS failed to properly read the language of a dispute or lost the letter before opening it. *Evans*, 889 F. 3d at 350. But that is not what SCS argues here. Not nearly.

Just as *Evans* found that PRA's failure to consider a debt disputed because it may have been validly owed is a mistake of law, SCS' position that PenFed's determination that the Debt was valid and no longer disputed because PenFed determined it wasn't a valid dispute, and since Wood did not respond to a letter from PenFed denying the validity of the dispute, is also a mistake of law. And

notably, SCS has presented no facts or argument that would evidence a factual mistake made by any employee of SCS that resulted in the violation.

Put another way, the decision by SCS that Wood no longer disputes the Debt was thus made by a process and procedure which is both faulty and known to SCS: both PenFed and SCS operated on the premise that if Wood did not respond to a letter by PenFed finding the Debt valid, then they would each consider the dispute resolved and the account eligible for credit reporting without a dispute marker. But the FDCPA, section 1692e(8) does not require Wood to respond to PenFed's letter (which notably only asks that Wood contact them to make payment arrangements) to again affirm his dispute after he had already done so in order to maintain his dispute. The "mistake" at issue is thus not factual, but legal as it relates to whether a dispute deemed invalid by PenFed and SCS due to a consumer's refusal to respond to a letter denying the validity of the dispute can reasonably render the dispute withdrawn. As a consumer can dispute a debt for any reason, valid or not, the dispute cannot be unilaterally rendered by SCS as being withdrawn/not being valid (without any further communication from the consumer) on the basis of a consumer's silence. SCS' argument to the contrary is wholly unavailing.

In the cases in which this Court has determined that a debt collector is entitled to the bona fide error defense, the defendant generally points to an employee error that could have been prevented had the employee followed

company policy. See, e.g., *Ross v. Fin. Asset Mgmt. Sys., Inc*., 74 F.4th 429, 435 (7th Cir. 2023) (employee failed to forward consumer dispute as directed by company policy); *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1155 (7th Cir. 2022) (employee accidentally forwarded consumer's letter to the wrong department); see also *Tolliver v. Nat'l Credit Systems, Inc*., No. 20-cv-728-jdp, 2021 U.S. Dist. LEXIS 180784, 2021 WL 4306056, at *4 (W.D. Wis. Sept. 22, 2021) (employee lost consumer's letter). SCS is not contending that any of its employees made an error in this case. Rather, SCS says that everything went as it was supposed to go: SCS maintains that the Debt was properly purchased as an account with a "resolved" dispute, and thus was not mistakenly purchased. [Dkt. #113-2, p. 197 of 243, l. 10 to p. 198 of 243, l. 7]. Yet SCS also sought indemnification from PenFed due to its position that the account was wrongly purchased as undisputed. This inconsistency evidences that SCS does not have or follow uniform regular orderly steps to avoid mistakes. *Leeb v. Nationwide Credit Corp.,* 806 F.3d at 895, 899 (7th Cir. 2015). It thus cannot assert the defense of bona fide error.

Further, according to SCS' policies and procedures, despite the fact that there was no indication, in connection with the sale of the Debt to SCS, as to whether Wood previously disputed the account, SCS asserts that the information transmitted was "complete" and not misleading in any material aspect. [Dkt. #113-2, p. 157 of 243, l. 197 of 243, l. 6-20]. SCS asserts that it relies on the information

and representations in the Purchase Agreement, and those made by PenFed, in determining whether a debt, including the Debt, must be communicated to a credit reporting agency as disputed. [Dkt. #113-2, p. 165 of 243 l. 6 to p. 166 of 243, l. 7]. But there is nothing in the Purchase Agreement indicating that the debts sold would not have been subject to a dispute, so this argument fails. Notably, the failure to report Wood's dispute was not the result of a technological glitch or a mistake by an individual employee; it was the product of a policy that "tolerates the risk of violating 15 U.S.C. § 1692e(8) exactly as it did here." *Thomas v. LVNV Funding, LLC*, 642 F. Supp. 3d 728, 731 (N.D. Ill. 2022).

Based on the foregoing, SCS has neither established that it made a bona fide mistake, or that it has policies adapted to prevent the violation alleged. Any mistake, if found, was a legal mistake and thus not excusable via bona fide error. SCS' adoption of PenFed's policies and procedures was *calculated* to violate the FDCPA, section 1692e(8), rather to prevent violation of that section of the Act.

## CONCLUSION

For the reasons set forth above, any error if found by this Court was a legal mistake, and not a factual one. Bona fide error thus is inapplicable. This Court should thus reverse the District Court's order and judgment granting SCS' motion for summary judgment, and should remand the case for further proceedings consistent therewith.

Dated: April 26, 2024          Respectfully submitted,


By: */s/Mario Kris Kasalo*
The Law Office of M. Kris Kasalo, Ltd.
Mario Kris Kasalo
4950 Madison St., PO Box 1425
Skokie, IL 60077
P: (312) 726-6160
E: mario.kasalo@kasalolaw.com

*Counsel for Plaintiff-Appellant*

**CERTIFICATE OF COMPLIANCE**

This document complies with the word limitation of Circuit Rule 32(c) because, including footnotes but excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), is 4745 words.

This document complies with the typeface requirements and the type-style requirements of Circuit Rule 32(c) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in size 14, Times New Roman font.

Dated: April 26, 2024               Respectfully submitted,

                                    By: */s/Mario Kris Kasalo*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: */s/Mario Kris Kasalo*
Mario Kris Kasalo